IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RICHARD C. LYNCH,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   Civil Action No. 3:24CV826 (RCY)<br>) |
| TRIBE EXPRESS, INC., *et al.*,<br>    Defendants. | )<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This is a personal injury action arising from a vehicular accident. The matter is before the Court on Defendants' Motion to Conduct a Physical and Mental Examination of the Plaintiff ("Motion for Examination"), ECF No. 11, and Plaintiff's Motion for Reasonable Conditions, ECF No. 13. Defendants seek to conduct a physical and mental examination of Plaintiff to discover the extent of the injuries he sustained from the vehicular accident, and Plaintiff—in addition to challenging certain aspects of the proposed examinations—requests a video and audio recording of any exam conducted. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons that follow, the Court will grant Defendants' Motion for Examination and will deny Plaintiff's Motion for Reasonable Conditions.

**I. RELEVANT BACKGROUND**

Plaintiff brings this negligence suit against Defendants Glen A. Helmly and Tribe Express, Inc. ("Tribe"), alleging Defendant Helmly negligently operated his tractor trailer resulting in a severe automobile accident and injury to Plaintiff. Compl. ¶¶ 19–35. Plaintiff alleges that Tribe is vicariously liable for Plaintiff's injuries because Helmly is employed by Tribe and was acting

within the scope of his employment at the time of the accident. Compl. ¶¶ 3, 4, 18–35.

This action was initially brought in the Circuit Court for the City of Richmond on July 30, 2024. Compl., Ex. A, Not. Removal, ECF No. 1-2. On November 20, 2024, Defendants collectively removed the action to this Court pursuant to 28 U.S.C. § 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."). Not. Removal, ECF No. 1. That same day, Defendants filed their Answer. ECF No. 2. On May 8, 2025, Defendants filed the instant Motion for Examination and an accompanying Memorandum in Support. Mot. Exam., ECF No. 11; Mem. Supp., ECF No. 12. Plaintiff filed his Opposition to Defendants' Motion, which doubled as his Motion for Reasonable Conditions ("Response in Opposition") on May 22, 2025. Resp. Opp'n, ECF No. 13. On May 28, 2025, Defendants filed their Reply. Reply, ECF No. 14.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 35(a)(1), the court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such an order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). "A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964) (internal citation omitted). A court may find a plaintiff's mental condition to be in controversy where:

> the plaintiff has claimed unusually severe emotional distress; [] the plaintiff has alleged a specific type of disorder or other psychiatric injury; [] the plaintiff has

>offered her own expert testimony to supplement her claim of emotional distress; or [] the plaintiff concedes that her medical condition is 'in controversy' pursuant to Rule 35.

*Anderson v. Sch. Bd.*, 2021 WL 12324325, at *2 (E.D. Va. Apr. 29, 2021).  A party that seeks to limit the medical examination "bears the burden of demonstrating 'good cause' or 'compelling need' for the request."  *Green v. Floyd Cnty., Ky.*, 2011 WL 13324005, at *2 (E.D. Ky. Apr. 18, 2011) (first citing *Calderon v. Reederei Claus-Peter Offen GmbH & Co.*, 258 F.R.D. 523, 525 (S.D. Fla. 2009); then *Abdulwali v. Washington Metro Transit Auth.*, 193 F.R.D. 10, 13 (D.D.C. 2000); and then *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 324 (N.D. Ga. 2000)).

### III. DISCUSSION

Defendants seek to have Plaintiff examined by two of their retained medical experts:  Dr. David Cifu, M.D., a medical doctor, and Dr. Michael Hall, Ph.D., a neuropsychologist.  Mot. Exam. 1.  Dr. Cifu's proposed tests—encompassed by both a physical examination and an interview—will assess Plaintiff's cognitive, behavioral, neurological and musculoskeletal injuries sustained from the vehicular accident.  Mot. Exam. Ex. 2.  There will be no invasive procedures.  *Id.*  Defendants also explain that Dr. Hall will administer a five-hour psychological evaluation that will include a clinical interview and comprehensive assessment.  *Id.*  Dr. Hall's examination will focus on Plaintiff's current cognitive and psychological functioning, to assess Plaintiff's reported injuries and to evaluate any claims that any of Plaintiff's pre-existing conditions may have worsened as a result of the accident.  *Id.*

It is uncontested that Plaintiff's mental and physical health is in controversy and that good cause for an examination exists.  Resp. Opp'n 4 ("[Defendants] ha[ve] an opportunity to conduct an examination pursuant to Rule 35").  In fact, the parties have agreed to the following conditions: (1) a third party (family member or friend) may be present for the interview portion of Dr. Hall's

examination; (2) the interview portion of Dr. Hall's examination may be recorded, but his testing may not; (3) Dr. Hall will produce the raw data from his exam to a licensed psychologist; and (4) the examination(s) will not be referred to as "independent" or "court ordered." Reply 1–2. Should the Court grant Defendants' Motion in its entirety, the parties also agree to the following conditions: (1) a third party (family member or friend) may be present for Dr. Cifu's examination; and (2) Dr. Cifu will produce all examination materials after the exam to counsel of record. *Id.*

These agreements notwithstanding, three issues remain for the Court to resolve. First, Plaintiff argues that the Court should not allow Dr. Cifu to perform a Rule 35 examination of Plaintiff because there is a conflict. Resp. Opp'n 4–5. Second, Plaintiff contends that an examination from both Dr. Cifu and Dr. Hall would be duplicative, and therefore the Court should deny Defendants' request with respect to one of these providers. *Id.* at 5–6. Finally, Plaintiff requests that the Court allow Plaintiff to record—via audio *and* video—his examinations, in their entirety, rather than just the limited portion of Dr. Hall's exam agreed upon by the parties. *Id.* at 8–9.[1] The Court will begin by addressing whether a conflict exists that would disqualify Dr. Cifu from examining Plaintiff before turning to Plaintiff's second argument. The Court will conclude its analysis by addressing Plaintiff's requested condition.

**A. There Is No Conflict Preventing Dr. Cifu From Examining Plaintiff**

Plaintiff argues that Dr. Cifu should not conduct Plaintiff's exam because Plaintiff previously contacted Dr. Cifu's office to set up an appointment. Resp. Opp'n 4–5.

Defendants do "not have an absolute right to choose the doctor who will perform an examination conducted pursuant to Rule 35." *Powell v. United States*, 149 F.R.D. 122, 124 (E.D.

---

[1] Plaintiff also initially requested that the Court prohibit Defendants and their experts from referring to the examinations as "independent" or "court ordered." Resp. Opp'n at 8–9. This request has been mooted by the parties' subsequent agreement. *See* Reply 2.

4

Va. 1993); *Anderson*, 2021 WL 12324325, at *2 (same).  However, without a "valid objection" to a defendant's selection, the defendant's choice should be respected.  *Powell*, 149 F.R.D. at 124 (first citing *Looney v. Nat'l R.R. Passenger Corp.*, 142 F.R.D. 264, 265 (D. Mass. 1992); and then *Liechty v. Terrill Trucking Co.*, 53 F.R.D. 590, 591 (E.D. Tenn. 1971)).  This is because "[d]efendants have absolutely no say in determining which physician a plaintiff chooses as a treating physician or an expert witness; likewise, a plaintiff should be limited in his ability to object to the selection of the defendant's expert witnesses." *Id.*

A valid objection exists where there is "bias or use of discredited or harmful means to conduct the examination."  *Anderson*, 2021 WL 12324325, at *2.  Examples of bias include situations "where a physician had a business or social relationship or attorney-client relationship with the attorney representing the defendant."  *Powell*, 149 F.R.D. at 124.  Courts have declined to find an objection valid when:  "(1) the examiner was abusive and defense oriented," *Shadix-Marasco v. Austin Reg'l Clinic P.A.*, 2011 WL 2011483, at *4 (W.D. Tex. May 20, 2011) (citing *Greenhorn v. Marriott Intern., Inc.*, 216 F.R.D. 649, 652–3 (D. Kan. 2003)); "(2) only the examiner had already received information from the defendant regarding the case," *id.* (citing *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 202–3 (N.D. Tex. 1996)); "(3) the examiner was regularly employed by insurance companies and defendants to perform medical examinations," *id* (citing *Powell*, 149 F.R.D. at 124); and "(4) the examiner may have received grants or was associated with an institution who may have received grants from a defendant manufacturer," *id.* (citing *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 26 (D. Conn. 1994)).

Plaintiff argues that Dr. Cifu should not be designated to perform a Rule 35 exam because of a conflict.  Resp. Opp'n 4.  Specifically, Plaintiff argues that Dr. Cifu is prohibited from performing the exam because he would be barred from testifying under Virginia's physician-

5

patient privilege statute.[2] *Id.* (citing Va. Code Ann. § 8.01-399).  Plaintiff originally contacted Dr. Cifu's office after his injury and explained that he had sustained a number of injuries from the car accident with Defendants.  *Id.*  Plaintiff was ultimately redirected to Dr. William Walker, Dr. Cifu's partner, for direct care; however, Plaintiff claims that Dr. Cifu obtained information about Plaintiff through his staff.  *Id.*  Plaintiff alternatively argues that, even if there is no actual conflict, there is an appearance of impropriety because Plaintiff's treating physician works at Virginia Commonwealth University, where Dr. Cifu also works.  *Id.* at 2–5.

Defendants argue that there is no conflict to exclude Dr. Cifu from examining Plaintiff because the Virginia physician-patient privilege does not apply here.  Reply 2.  Defendants note that Plaintiff spoke with Dr. Cifu's administrative staff, but that Dr. Cifu had no involvement with, or knowledge of, Plaintiff because Dr. Cifu does not review a potential patient's data prior to that patient's initial appointment.  *Id.*  More importantly, Defendants point out that Plaintiff fails to allege that Dr. Cifu "examin[ed] or treat[ed] the patient in a professional capacity," which is required to trigger any privilege under the aforementioned Virginia state law.  *Id.* (quoting Va. Code Ann. § 8.01-399(A)).  Defendants provide an affidavit from Dr. Cifu to explain that Dr. Cifu never met with or obtained any information about Plaintiff.  *Id.* at 3; Cifu Aff., ECF No. 14-2.  Defendants also point out that a conflict may not be imputed on Dr. Cifu just because Plaintiff sees Dr. Cifu's colleague.  *Id.* at 3.

The Court does not find any conflict that would prevent Dr. Cifu from conducting an examination under Federal Rule of Civil Procedure 35.  Plaintiff does not allege any attorney-client, social, or other kind of relationship between Dr. Cifu or Defendants' counsel.  *See generally*

---

[2] "Except at the request or with the consent of the patient, or as provided in this section, no duly licensed practitioner of any branch of the healing arts shall be permitted to testify in any civil action, respecting any information that he may have acquired in attending, examining or treating the patient in a professional capacity."  Va. Code Ann. § 9.01-399(A).

Resp. Opp'n. With respect to Plaintiff's patient-physician privilege argument premised on Va. Code Ann. § 8.01-399(A), Dr. Cifu never attended, examined, or treated Plaintiff. *See* Reply Ex. 1 ("[Plaintiff] says he called Dr. Cifu['s] office trying to make an appointment and explained his situation to his support team. However, [Plaintiff] was ultimately transferred to Dr. Walker."). The Court also agrees with Defendants that current case law does not support finding a conflict by virtue of Dr. Cifu being colleagues with Plaintiff's physician, nor does Plaintiff identify case law to suggest otherwise. At bottom, Plaintiff fails to identify any true conflict that would preclude Defendants from utilizing this expert.

**B. Multiple Examinations Are Permitted Under Rule 35**

Plaintiff seeks to limit the number of examinations to which Plaintiff would be subjected, arguing that Defendants' proposed examinations would be duplicative. Resp. Opp'n 5–6.

As an initial matter, Federal Rule of Civil Procedure 35 does not limit the number of examinations to which a party may be subjected. Fed. R. Civ. P. 35; *Green*, 2011 WL 13324005, at *2; *Peters v. Nelson*, 153 F.R.D. 635, 638 (W.D. Iowa 1994). A subsequent examination may be appropriate when, *inter alia*: (1) different injuries require examinations by "distinct medical specialties," *Peters*, 153 F.R.D. at 638 (citing *Marshall v. Peters*, 31 F.R.D. 238, 239 (S.D. Ohio 1962)); (2) "where the first examination was not adequate or complete," *id.* (first citing *Mayer v. Ill. N. Ry.*, 324 F.2d 154 (7th Cir. 1963); and then *Strasser v. Prudential Ins.*, 1 F.R.D. 125 (W.D. Ky. 1939)). In *Peters v. Nelson*, the district court found that an exam by both a psychiatrist and neuropsychologist was not duplicative based on the complexity of the mental injuries, the possible causes, and the different tests conducted by the medical providers. *Id.* at 639 ("The tests they apply and the manner in which they evaluate their results are not identical and are not even likely to be based on the same data, such that one doctor could rely on data gathered by another, and

7

arrive at an expert opinion without a personal examination of the plaintiff.").

Plaintiff argues that the Court should only allow Defendants to proceed with one examination because allowing Dr. Hall and Dr. Cifu to examine Plaintiff would result in duplicative examinations. Resp. Opp'n 5–6. Plaintiff argues that Defendants' characterization of the exams is misleading. *Id.* at 6. Although Defendants portray that Dr. Hall, a neuropsychologist, will conduct a "mental exam" and Dr. Cifu, a M.D., will conduct a "physical exam," Plaintiff contends that both doctors will focus on Plaintiff's brain injury, which Plaintiff argues would be duplicative. *Id.*

Defendants disagree. First, Defendants point out that Dr. Hall and Dr. Cifu are experts in different field whose tests are for different purposes. Reply 4. Defendants rely on a Virginia case to support their proposition that Dr. Hall, a neuropsychologist, is qualified to state the results of his psychological testing, and Dr. Cifu, a medical doctor, is qualified to state the diagnosis and cause of Plaintiff's injuries. *Id.* at 5.

The Court does not find that examinations by Dr. Cifu and Dr. Hall would be duplicative. As Defendants point out, Dr. Hall and Dr. Cifu are experts in entirely different fields. *See* Mot. Exam. 1; Reply 4. Dr. Cifu is a medical doctor and Dr. Hall has a doctorate in Neuropsychology. The tests that either expert applies and the manner in which they evaluate the results "are not identical and not even likely to be based on the same data." *Peters*, 153 F.R.D. at 638; *see* Mot. Exam. Ex. 3; Reply Ex. 3. Moreover, Dr. Cifu's examination includes a physical examination component. Mot. Exam. Ex. 3. The district court in *Peters* found that an examination by a psychiatrist and neuropsychologist were distinct based on the complexity of the plaintiff's mental injuries. *Id.* at 639. Similarly, the Court finds that the complexity of Plaintiff's injuries in this case, in light of Plaintiff's prior accidents, necessitates comprehensive examinations that will

assess the extent and cause of Plaintiff's alleged traumatic brain injury.  *See* Mem. Supp. 2.

**C. Video and Audio Recordings Are Not Appropriate in This Case**

Plaintiff requests the Court impose a condition on any examination(s) authorizing Plaintiff to make video and audio recordings of each such exam.  Resp. Opp'n 8.

Absent "a special need or good cause, most federal courts have not permitted either a recording or an observer of an examination." *Fiello v. Daimler Trucks N. Am., LLC*, 2021 WL 1381131, at *4 (M.D.N.C. Apr. 12, 2021) (quoting *Spencer v. Huron Cnty.*, 2016 4578102, at *3 (E.D. Mich. Sept. 2, 2016)); *see also Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505 (E.D. Cal. 2011) ("[T]he presence of recording devices during such exams is also disfavored."); *Holland v. United States*, 182 F.R.D. 493, 495 (D.S.C. 1998) ("[T]he majority of federal courts have rejected the notion that a third party should be allowed, even indirectly through a recording device, to observe a Rule 35 examination.").  Courts are typically hesitant to permit recording because such an intrusion may "(1) potentially invalidate the examination results; (2) fail to provide a 'level playing field,' as plaintiff was not required to tape record his examinations with his own health care providers; and (3) inject a greater degree of the adversary process into an evaluation that is to be neutral." *Wright v. Hobby Lobby Stores, Inc.*, 344 F.R.D. 538, 545 (D. Co. 2023) (quoting *Mayorga Martinez v. United States*, 2019 WL 4277803, at *4 (C.D. Cal. Apr. 10, 2019)); *see Holland*, 182 F.R.D. at 496 ("[Plaintiff] could perceive the videotape as critical to his case and fail to respond in a forthright manner.  In addition, the videotape would give Plaintiff[] an evidentiary tool unavailable to Defendant, who has not been privy to physical examinations made of [Plaintiff].").

Plaintiff argues that audio and video recording is necessary for the Court, Plaintiff, and the jury to "properly evaluate [Defendants' experts'] opinions and the basis for their conclusions."

Resp. Opp'n 8. Plaintiff argues this is particularly important given the nature of the testing. *Id.* at 7. That is, neurological testing may be particularly "problematic" since the tests vary in interpretation and are "highly subjective." *Id.* Specifically, Plaintiff points out that testing designed to identify exaggerated or feigned cognitive impairment may be triggered when an individual has genuine cognitive or memory issues. *Id.* Plaintiff relies heavily on *Wright v. Hobby Lobby Stores, Inc.*, 344 F.R.D. 538 (D. Colo. 2023), for the proposition that a recording device may be appropriate in the context of neurological testing, that it will not be intrusive, and that it will not heighten the adversarial nature of the exam, as the examination by an opposing party expert is inherently adversarial in nature. *Id.* at 8–9. Plaintiff notes that, given the agreed-to third-party observers, the additional presence of a recording device will have little to no impact. *Id.*

Defendants adamantly disagree with Plaintiff on the issue. Reply 5. First, Defendants contend that the basis of Plaintiff's argument—fairness—is disingenuous because Plaintiff has not produced any recording of examinations by his experts but instead attempts to subject Defendants to a standard by which he himself has not abided. *Id.* Defendants also argue that Plaintiff fails to demonstrate a need for a recording. *Id.* at 5–6. In particular, Plaintiff fails to present evidence of bias or of unorthodox or harmful techniques by Defendants. *Id.* Lastly, Defendants point out that recording the examination threatens to negatively affect the examinations. *Id.*

Plaintiff predominantly emphasizes the argument that there would be minimal impact to Defendants as Defendants have already agreed to allow third-party observers. However, Plaintiff's argument overlooks the fact that audio and video recordings are *disfavored* and that Plaintiff must show a special need or good cause, both of which are absent from Plaintiff's argument. The plaintiff in *Wright*, the case relied upon by Plaintiff, raised a concern relating to the timing of certain memory-related questions, and the court reasoned that an audio-recording was the only

way to address the validity of those tests because said recording could check the timing of the examination.  *See Wright*, 344 F.R.D. at 542.  Here, Plaintiff raises concerns that certain test results might suggest that he is exaggerating or feigning cognitive impairments, when in fact those test results are based on Plaintiff's genuine cognitive and memory issues.  Resp. Opp'n 7.  Unlike the situation in *Wright*, Plaintiff does not explain how a video or an audio recording would validate or invalidate the proposed tests, nor does he explain why cross-examining Defendants' experts would not be sufficient to explain these hypothetical test results.

     Absent any showing of good cause or special need, the Court finds that a video or audio recording is inappropriate for two reasons.  First, a video or audio recording fails to provide the parties with a "level playing field."  *Wright*, 344 F.R.D. at 545 (quoting *Mayorga Martinez*, 2019 WL 4277803, at *4).  Plaintiff did not record or let a third party attend his examinations; therefore, it would be unfair to Defendants to allow Plaintiff the advantage of recording every part of his exams *in addition* to having a third-party present at nearly every part of the exams.  Second, the Court finds that recording the exams in their entirety runs the risk of making the proceedings more adversarial.  The Court understands Plaintiff's position that the proceedings will be adversarial irrespective of the recordings, but the Court nevertheless finds that the requested recordings would "inject a *greater* degree of the adversary process into" the evaluations.  *Wright*, 344 F.R.D. at 545.  Therefore, the Court is not persuaded to impose the conditions Plaintiff seeks above and beyond what the parties have already agreed upon.

11

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Examination and deny Plaintiff's Motion for Reasonable Conditions.

An appropriate Order shall issue.

/s/ *[signature]*
Roderick C. Young
United States District Judge

Date: July 2, 2025
Richmond, Virginia

12